**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAQUELINE WINSTON, individually,**
**and on behalf of all others similarly situated,**

                                    **Plaintiffs,**

      v.                                        **5:16-cv-0235**

**CITY OF SYRACUSE, and**
**DEBORAH SOMERS in her official capacity**
**as the Commissioner of Water,**


                                    **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

## I.    INTRODUCTION

Plaintiff Jaqueline Winston[1] commenced this action pursuant to 42 U.S.C. § 1983

asserting that the City of Syracuse's "policy and practice of terminating water service to

blameless tenants based upon their landlord's failure to pay the water bill" violates her

rights to equal protection and substantive due process as guaranteed by the Fourteenth

Amendment to the U.S. Constitution.  Compl., dkt. # 1, ¶ 2.  Defendants City of Syracuse

and Deborah Somers move to dismiss the action pursuant to Fed. R. Civ. P. 12(c) .  Dkt.

_____

[1]Plaintiff commenced this case as a putative class action.  Because a Fed. R. Civ. P. 23 class has not been certified at this time, the Court treats Ms. Winston as the sole plaintiff for purposes of the instant motion.

10. Plaintiff opposes the motion, dkt. # 19, and Defendants have filed a reply. Dkt. # 20. The Court elects to decide the motion without oral argument. For the reasons that follow, the motion is granted in part and denied in part.

## II.  STANDARD OF REVIEW

The standard pursuant to Fed. R. Civ. P. 12(c) is identical to that under Rule 12(b)(6). *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). On a Rule 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions, non-factual matter, or "conclusory statements" set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 -79 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may also review "any matter of which the court can take judicial notice for the factual background of the case." *Jenkins v. Cnty of Washington*, No. 1:14-CV-0064, 2015 U.S.

2

Dist. LEXIS 113516, *46-47 (N.D.N.Y. Aug. 27, 2015).

## III.  BACKGROUND

### a.  Facts

The City of Syracuse, New York ("the City") is a municipal corporation that is the sole supplier of water service within the City.  Compl. ¶¶ 15-16.  Plaintiff Jacqueline Winston currently resides at 653 West Moreland Ave. Syracuse, New York with her husband, her sister, and her sister's nine-year-old son.  *Id.* ¶ 26.[2]  She has lived at the property since 2005. *Id.*  This residence is a rental unit. *Id.* ¶ 31.  Ms. Winston's rent is $600 per month, and she is also responsible to pay the National Grid utility charges for her residence.  *Id.*  Ms. Winston is current on her rental bill and her National Grid utility bill.  *Id.* ¶ 33.

The City supplied Ms. Winston and her family with water to their home through the Water Department.  *Id.* ¶ 32.  The water bill for water service from the City has always been the responsibility of the landlord.  *Id.* ¶ 31.  The City's Water Department website "advises individuals renting homes not to apply for water service, as the water department is 'not involved in any lease agreement between owner and tenant.'"  *Id.* ¶ 17.

On January 19, 2016, Ms. Winston received a notice on her door informing her that her water would be shut off if the water bill of $472.97 was not paid in full within thirty days. *Id.* ¶ 34.  Ms. Winston contacted the maintenance man at the property who assured

---

[2]The Complaint alleges that Ms. Winston is the "the mother of two young children, a nine year old daughter and a one year old daughter," and that her nine-year-old daughter has been diagnosed with autism. Compl. ¶¶ 25, 28.  As indicated above, however, the Complaint alleges that Plaintiff currently lives with "her husband, her sister, and her sister's nine year old son." *Id.* ¶ 25.  It is unclear whether Plaintiff's children resided with her at the time of the events in question in the lawsuit, but, as discussed above, she alleges that the termination of the water service had a negative impact upon her family and, in particular, her nine-year-old daughter. *Id.* ¶ 40.  The Court accepts these allegations as true for purposes of the instant motion.

her the bill would be paid.  *Id.* ¶ 35.  Ms. Winston assumed "everything would be fine and her family would continue receiving water service."  *Id.*  However, on February 23, 2016, the water service was shut off to Ms. Winston's home by the City's Water Department.  *Id.* ¶ 36.  Ms. Winston again contacted the maintenance man, who once again assured her the bill would be taken care of, *id.* ¶ 37, but it was not.  After one day without water, Ms. Winston contacted the Syracuse City Water Department to pay the bill herself.  *Id.* ¶ 38. She was informed by an employee of the City Water Department that she would "be allowed to pay the [water] bill but would not be able to get water service restored to the property because she is not the owner." *Id.*

"Ms. Winston's family [went] for three days without water.  They [had] to buy gallons of water from the store just so they [could] cook, drink, brush their teeth, and wash up." *Id.* § 39.  Ms. Winston alleges that she and her family were "irreparably harmed without water service to her home." *Id.* ¶ 40.  She contends that the termination of the water service "disrupt[ed] the structure that is so important to her daughter with autism's day to day life." *Id.*  Moreover, under the Syracuse Code of Ordinances, upon the termination of water service the residence is deemed uninhabitable. *Id.* ¶ 22.[3]

### b.  Syracuse's Code of Ordinances

Syracuse's Code of Ordinances provides that water services offered by the City are "to be connected to by the property owner when he makes application for a service to said property."  Syracuse Code of Ordinances, Part M ("the Code"), § 16-11.   The Code further provides that "[w]ater bills ... are payable without penalty

---

[3]There is no indication that Ms. Winston was displaced from her home on this basis.

within twenty-five (25) days from the date on the bill.  After twenty-five (25) days from the date on the bill, a penalty of five (5) percent of what is owed will be added to current charges and one percent per month thereafter will be added to the total arrears." *Id.*, ¶ 16-53.   "If a bill remains unpaid for sixty (60) days from the date on the bill, the water may be turned off provided notice is given to the consumer[4] and any known occupant(s) in accordance with the provisions of section 16-108(b) and section 16-108(c)." *Id.*

Syracuse's standard Notice of Water Shut-Off, which was presumably the notice that Plaintiff received on her door on January 19, 2016, *see* Compl. ¶ 34, provides:

### NOTICE OF WATER SHUT-OFF

NOTICE OF WATER SHUT OFF TO ALL OWNER(S) & OCCUPANT(S):

The Department of Water shall shut off the water at this property in 30 days.
Water shut off may be because of, but is not limited to,
one or more of the following reasons:

a. non-payment of water bills; contact 315-448-8238 for payment information and/or
b. damage and/or destruction of Department of Water equipment; and/or
c. the owner has violated any of the Department of Water's rules and regulations
d. the structure on the property to which water is supplied is declared unfit for human habitation, dangerous to human life or detrimental to health by the Director of Code Enforcement pursuant to Section 27-115 of the Property Conservation Code of the Syracuse.

OWNER(S) & OCCUPANT(S) HAVE THE RIGHT
TO AN IMPARTIAL HEARING BEFORE WATER IS SHUT OFF:

---

[4] The Code provides that "[w]herever the word 'consumer' shall be used in these rules and regulations, it shall mean the owner of the premises." Code, § 16-1.

Any owner(s) and/or known occupant(s) of the above stated property have the right to request an impartial hearing to contest the shut off of water at the site. A request for a hearing must be received by the Department of Water; 106 City Hall, 233 East Washington Street, Syracuse, NY 13202 within fifteen (15) days of receiving this notice.

The request for a hearing may be made in any of the three following ways:

a. through a legibly written or typed request sent via certified mail to the Department of Water; or
b. through hand delivery to the Department of Water of a notarized statement requesting a hearing;
c. by signing a request for a hearing form at the Department of Water

For Legal Advice contact: Legal Services of Central New York

Attention Special Advocacy Unit
472 South Salina St., 3d Floor
Syracuse, NY 13202
315-703-6500
Email: specialadvocacy@lscny.org

Per Section 27-115 of the Property Conservation Code of the City of Syracuse: Shut off of water will render premises unfit for human habitation

Sickinger Affirm., Ex. A.[5]

The Code provides that following service of this notice, the owner or known occupants have the right to request a hearing before a hearing officer designated by the commissioner of water. *See* Code § 16-108(d). "The hearing officer shall not be an employee of the department of water." *Id.*

The hearing officer shall not be bound by the technical rules of evidence and any relevant evidence may be submitted by any party. The hearing officer shall have discretion to make decisions on a case by case basis. The hearing officer shall issue a written decision. The

---

[5]This Notice complies with the requirements of §§ 16-108(b) and 16-108(c) in that the it was posted on Plaintiff's door, it informed her of the possibility of termination of her water service, and it informed her of the procedure for challenging the termination. *See* Code at §§ 16-108(b) and 16-108(c) .

hearing officer's decision shall be binding on the commissioner of water.  Said hearing and decision must be finalized prior to the shut off of water at the property by the department of water. . . . . In the event that the decision is to shut off the water at the property, the written decision shall provide a date when the department of water will shut off the water at the property.

*Id.*

The Code provides that "[t]he department of water may shut off the water to any property where the owner failed to correct the violation and no hearing was requested either by the owner or any known occupant(s) after suitable notice has been served." *Id.*   When a hearing is requested, "the department of water may only shut off the water at the premises after the hearing has been held and a written decision has been made upholding the basis for the water shutoff." *Id.*

Where "an event [that could result in termination of water service] is not abated and the water is shut off, a fee of one hundred forty dollars ($140.00) will be charged to the owner to turn the water supply back on at the property." *Id.* § 16-108(e).  "[W]here the owner has failed to abate the violation of non-payment of the water bill an occupant may pay the outstanding water bill for the property and any associated fees, including but not limited to the restoration of service fee, if they choose to do so." *Id.*  "In any case where there has been a shut off of water at a property, the department of water shall restore water service for the owner or lawful occupant(s) of the property only when the event which is the basis for the shut off no longer exists and the fee set forth in section 16-108(e) has been paid." *Id.* at § 16-108(f).  If an occupant elects to pay the outstanding water bill and the restoration of service fee, "[i]t shall then be the responsibility of the occupant to take any

7

necessary action to recoup the payment from the owner of the property in accordance with Article 7, Section 235-a of the New York State Real Property Law. Payment of the bill by the occupant does not relieve the owner of their responsibility for future payments." *Id.* at § 16-108(e).

### c. Plaintiff's Claims

Plaintiff brings claims alleging violations of rights to equal protection and substantive due process as guaranteed by the Fourteenth Amendment.  As to the equal protection claim, Plaintiff asserts that "[t]he General Ordinances of the City and the policies and practices of the City only permit water service to be established at the owner's request." Code ¶ 42; *see id.* ¶ 23 ("The City has a policy and practice of not allowing plaintiffs to open a water service account in their own name to keep their water service on.").  Thus, Plaintiff contends that "[t]he City water ordinance on its face and as applied violates the Equal Protection Clause of the Fourteenth Amendment.  Specifically, she asserts that the City creates two classes of water users - owners and tenants - and denies tenants the right to establish a water account in their own name."  *Id.* ¶ 43.  Plaintiff further contends that "[t]he City also creates two classes of tenant water users - tenants whose landlords have delinquent water bills and tenants whose landlords are current in their payments. The City refuses to continue water service for the class of tenants whose landlords have delinquent water bills.  The City also refuses to continue service to tenant water users who will pay for prospective service on the accounts of landlords with arrears."  *Id.* ¶¶ 44-45.   This, Plaintiff contends, violates her rights to equal protection under

8

the Fourteenth Amendment. *Id.* ¶¶ 48-49.

Plaintiff also alleges that "[t]he City requires [a tenant] to pay the entire outstanding debt of their landlord in order to continue receiving water service. Termination of water service to [a tenant's] home[] renders the property unfit for human habitation." *Id.* ¶ 53. Plaintiff contends that "[r]equiring [her] to assume [her] landlord's debt to avoid losing [her] water service and [her] home being deemed uninhabitable . . . violates [her] right to substantive due process under the Fourteenth Amendment to the United States Constitution." *Id.* ¶ 54.

Plaintiff seeks declaratory and injunctive relief, as well as costs, disbursements and reasonable attorney's fees pursuant to 42 U.S.C. § 1988. Compl. pp. 10-11. Plaintiff asks that the Court declare that:

> a. the failure of the City of Syracuse to provide water utility service upon the request to users of the service who are tenants and to deny water service to tenants who do not pay their landlord's delinquent bills violates [tenants'] rights under the Equal Protection and Substantive Due Process Clauses of the 14th Amendment to the U.S. Constitution;

> b. the ordinances of the City of Syracuse and the policy and practices of the City insofar as they bar a tenant from establishing a water account and provide for the termination of water service to tenants whose landlords have unpaid water bills are in violation of the Substantive Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

*Id.*

## IV.    DISCUSSION

### a.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "requires the government to treat all similarly situated individuals alike." *City of Cleburne v.*

*Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "As the Supreme Court has observed, '[t]he Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons.'" *Osterweil v. Bartlett*, 819 F. Supp.2d 72, 86 (N.D.N.Y. 2011)(quoting *Romer v. Evans*, 517 U.S. 620, 631(1996)). "Accordingly, the Supreme Court has 'attempted to reconcile the principle with the reality by stating that, if a law neither burdens a fundamental right nor targets a suspect class, [the court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end.'" *Id.* (quoting *Romer*, 517 U.S. at 631); *see also Vacco v. Quill*, 521 U.S. 793, 799 (1997) (holding that the Equal Protection Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly.")(internal quotation marks and citation omitted). While "[t]he Supreme Court has consistently recognized that . . . '[t]he Equal Protection Clause [denies] to States the power to legislate that different treatment be accorded to persons placed by a statue into different classes on the basis of criteria wholly unrelated to the objective of that statute,'" *Davis v. Weir*, 497 F.2d 139, 144 (5th Cir. 1974)(quoting *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)), "a legislative classification must be sustained if the classification itself is rationally related to a legitimate governmental interest." *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 533 (1973).

As indicated above, Plaintiff asserts that the Code creates two classes of

water users - owners and tenants, and two classes of tenant water users - tenants whose landlords have delinquent water bills and tenants whose landlords are current in their payments. She contends that her equal protection rights are violated because the City denies tenants the right to establish a water account in their own names, and because the City refuses to continue water service for the class of tenants whose landlords are delinquent on their water bills even when a tenant water users "agree[s] to pay for prospective service on the accounts of landlords with arrears." Compl. ¶ 45.

Plaintiff acknowledges that "[w]here, as here, the challenged classifications are not protected, and there is no fundamental right at stake, the proper standard of review is rational basis." Pl. MOL, p. 8 (citing *Yuen Jin v. Mukasey*, 538 F.3d 143, 158 (2d Cir. 2008)).

> [The Supreme Court] many times [has] said . . . that rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. Nor does it authorize the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.
>
> A [governmental entity], moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. A statute is presumed

constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.

*Heller v. Doe by Doe*, 509 U.S. 312, 319–21 (1993).

Plaintiff argues that the disparate treatment between landlords and tenants, as well as between tenants whose landlords are delinquent on water bills and those whose landlords are not, fails to serve a rational governmental purpose. In this regard, Plaintiff argues that the Code "denies a tenant the right to establish a water account in their own name and then coerces the tenant to pay their landlord's bill to avoid constructive eviction has no rational basis and thus violates the Equal Protection Clause of the U.S. Constitution." Pl. Mem. L. p. 11 (citing *Pilchen v. City of Auburn,*, 728 F. Supp.2d 192, 204 (N.D.N.Y. 2010)).

### 1. Property Owners vs. Tenants

With regard to Plaintiff's first alleged classification, property owners versus tenants, the City argues that the classes are not similarly situated and that the disparate treatment in allowing only property owners to contract for water service is rationally related to legitimate government purposes. The City maintains that the differential in treatment allows for liens against the property of a delinquent landlord as a means of collecting on an unpaid water bill. The City further maintains that given the transitory nature of tenants, the collection of payment on past-due water

12

accounts in a tenant's name would be a difficult endeavor for municipalities. Hence, the City argues: "If tenants were permitted to manage and hold their own individual water accounts, Defendants would have no recourse against a tenant who fails to pay his or her water bill upon moving out, because a tenant has no ownership stake in the property in which they reside." Def. MOL, p. 15.

In addition, the City contends that in the case of multi-unit dwellings, it would be impossible to determine individual tenant water usage because, in most cases, water is provided through a single pipe and measured by a single meter at each property. This, the City contends, provides a rational basis for Defendants' policy of requiring a property owner to set up and manage the utility account "because there would be no way to ensure that individual tenants in a multi-unit dwelling were being billed for their own separate water use." Def. MOL, p. 16.

Finally, the City argues that its policies encourage water account holders "to behave in a financially responsible manner, which in turn supports the important government interest of maintaining a financially sound utility system. A property owner, knowing they will ultimately be responsible for the water bill and facing the risk of a lien being placed on his or her land, is more likely to rent to responsible tenants and to collect a security in advance." *Id.*

The Court finds that the two classes are similarly situated in that both seek to obtain water services from the City. The Court also finds that the City's proffered reasons for entering into water service contracts only with property owners is rationally related to the legitimate governmental purposes of effective debt recovery and efficient management of water services. While Plaintiff suggests that other

methods of debt collection exist, *see* Compl. ¶ 47,[6] she fails to meet the burden of

negating "every conceivable basis which might support" the City's policy. *See Heller*,

509 U.S. at 320. Thus, the Court finds that treating property owners differently than

tenants in contracting for municipal water services passes constitutional muster

under the Due Process Clause. *See U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179,

101 S. Ct. 453, 66 L. Ed.2d 368 (1980)("Where ... there are plausible reasons for

[legislative] action, our inquiry is at an end." ); *see also DiMassimo v. City of*

*Clearwater,* 805 F.2d 1536, 1542 (11th Cir.1986)("We therefore hold that the

landowner and the tenant are so dissimilarly situated that they may be treated

differently under the City's ordinances without offending the Fourteenth

Amendment's equal protection clause."); *Midkiff v. Adams Cty. Reg. Water Dist.*,

409 F.3d 758, 771 (6th Cir. 2005)("The Water District's policy, rationally

distinguishing between landlords and tenants, withstands equal protection

scrutiny."). Accordingly, Defendants' motion is granted as to Plaintiff's equal

protection claim based on the differential treatment between property owners and

tenants in establishing water service accounts.

### 2.  Tenants of Delinquent Landlords vs. Non–Delinquent Landlords

Turning to Plaintiff's second alleged classification, tenants of delinquent

landlords versus tenants of non-delinquent landlords, Plaintiff contends that not only

does the Code deny a tenant the right to establish a water account in her own

---

[6]Plaintiff asserts that "[t]he City can also develop rules or a procedure whereby a tenant could pay their rent into an escrow account maintained by the City or another governmental entity to satisfy the past due water arrears." Compl. ¶ 47.

name, it also "coerces the tenant to pay their landlord's bill to avoid constructive eviction." Pl. MOL, p. 11. While Plaintiff "does not dispute that the Defendants have a legitimate interest in collecting water debts from landlords," she maintains that "it is not rational to collect those debts by terminating water service to tenants." *Id.* p. 12. The City argues that the two classes are not similarly situated, and that it has a rational basis for its water shut-off policy because there is a legitimate difference between a landlord who is paying for a municipal service that benefits the building that houses tenants, and one who is not. In this regard the City asserts that it has a rational basis to expect to be paid for water services rendered, and to take action to collect on debts owed for services provided by the municipality, which means that tenants of delinquent landlords will be treated differently than tenants of non-delinquent landlords.

### A. Facial Challenge

The Court finds no equal protection violation on the face of the Code based on the differentiation in treatment between tenants of delinquent landlords versus tenants of non-delinquent landlords. Tenants of delinquent landlords are not similarly situated with tenants of non-delinquent landlords. The two alleged classes are differentiated by the non-payment for water services by landlords in one class, and the payment for such services by landlords in the other.

Further, there is a rational basis to treat tenants of delinquent landlords similarly to their landlords and differently from tenants of non-delinquent landlords. While the Code ultimately limits restoration of water service to a tenant only upon

the payment of the property owner's arrears and a restoration fee, *see* Code § 16-108(e)("[W]here the owner has failed to abate the violation of non-payment of the water bill an occupant may pay the outstanding water bill for the property and any associated fees, including but not limited to the restoration of service fee, if they choose to do so."); *id.* at § 16-108(f)("In any case where there has been a shut off of water at a property, the department of water shall restore water service for the owner or lawful occupant(s) of the property only when the event which is the basis for the shut off no longer exists and the fee set forth in section 16-108(e) has been paid."), the legitimate governmental purposes of effective debt recovery and efficient management of water services discussed above with regard to the property owner versus tenant classifications are rationally served by requiring tenants of delinquent landlords to satisfy the arrears before turning the water back on. Thus, despite Plaintiff's contention of how she was treated, the Code dictates that a tenant will have water service restored upon the payment of the arrears and restoration fee. Code, § 16-108(f). In such circumstances, tenants of delinquent landlords are treated no differently that the landlords themselves.

It is also important to note that while the Code limits restoration of water service to a tenant only upon the payment of the property owner's arrears and a restoration fee, the Code's restoration provision is directed only to current tenants. *See id.,* § 16-108(e)("[W]here the owner has failed to abate the violation of non-payment of the water bill *an occupant* may pay the outstanding water bill for the property and any associated fees, including but not limited to the restoration of

service fee, if they choose to do so. . . . ")(emphasis added); *id.*, § 16-108(f) ("In any case where there has been a shut off of water at a property, the department of water shall restore water service *for the owner or lawful occupant(s)* of the property only when the event which is the basis for the shut off no longer exists and the fee set forth in section 16-108(e) has been paid.")(emphasis added).  Thus, the re-commencement provisions bear a rational relationship to an  occupant's tenancy at the location where the debt arose. *See Brown v. City of Barre, Vt.*, 878 F. Supp. 2d 469, 502 (D. Vt. 2012)("As the City has pointed out, however, the instant case is one in which neither Plaintiffs nor class members can claim 'innocent' or 'unrelated' status vis-a-vis their landlord's water service arrearages. They thus possess an undeniable relationship to the debt the City seeks to collect.")(citing *Gunter*, 2011 WL 1225791, at *11 (finding no equal protection violation because, among other things, "defendant's request that plaintiff pay for the arrears on service to the residence was rational in light of the fact that plaintiff was the co-owner and lived at the premises when the arrears accrued.")).  For this reason, the instant case does not sit on all fours with the cases upon which Plaintiff primarily relies.  These cases found unconstitutional municipal provisions which required tenants to satisfy debts to which they had no connection. *See, e.g., Davis,* 497 F.2d at 142 (observing that "applicants whose contemplated service address is encumbered with a pre-existing debt (for which they are not liable)" cannot be forced to pay that debt in order to obtain water service); *Pilchen*, 728 F. Supp.2d at 202 (municipality coerced "innocent third party" into "assuming her landlord's debt in order to maintain a

service the City has agreed to provide."); *Koger v. Guarino*, 412 F. Supp. 1375, 1391 (E.D. Pa.1976) ("The City has no valid governmental interest in securing revenue from innocent applicants who are forced to honor the obligations of another [.]").

Because there is a rational basis to allow only property owners to contract for municipal water services, there is also a rational basis to treat tenants of delinquent landlords differently than tenants of non-delinquent landlords - or, more appropriately, to treat tenants of delinquent landlords similarly to delinquent landlords. To hold otherwise would frustrate the articulated basis of the Code by allowing situations where delinquent landlords' debts go uncollected yet water services continue, potentially causing the accumulation of debt that the City cannot recover. Accordingly, Defendants' motion to dismiss Plaintiff's facial equal protection claim is granted.

### B. As-Applied Challenge

However, Plaintiff presents a plausible "as-applied" equal protection challenge. She contends that she was informed by an employee of the City Water Department that she would "be allowed to pay the [water] bill but would not be able to get water service restored to the property because she is not the owner." Compl. ¶ 38. While this representation is contrary to the Code's provisions at §§ 16-108(e) and (f), at this stage of the litigation the Court must accept Plaintiff's factual allegation as true and draw all reasonable inferences on her behalf. In doing so, Plaintiff presents a plausible contention that the City's policy and practice is not to

18

comply with the Code's provisions for the recommencement of water services by a tenant after a landlord defaults on payment of a water bill.   While the Water Department employee who spoke with Plaintiff might have mis-understood or mis-spoke about the Code's provisions, or might have presented a unique position that did not represent the City's official policy or custom, *see Brown v. City of Barre, Vt.*, 878 F. Supp. 2d 469, 498 (D. Vt. 2012)("Here, it would be inaccurate to characterize the City's official policy or custom as one requiring tenants to pay for their landlords' debts. Neither plaintiff was actually required to do this in order to obtain a preservation or restoration of water service, and stray statements by the City's Clerk and Treasurer that this option was available do not constitute an official policy or custom.  Rather, the evidence supports the more limited conclusion that the City has an official policy or custom, reflected in its Ordinance, that outstanding arrearages for water service to a property must be paid before water service to that property is restored.");  *id.,* at 497 ("'As for the City's policies and practices, Plaintiffs must establish that they rise to the level of an "official policy or custom that ... causes the plaintiff to be subjected to ... a denial of a constitutional right."'" (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995)); *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993)("The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."), the Court cannot engage in such speculation at this stage of the litigation.

　　Assuming the truth of Plaintiff's allegation, and drawing the reasonable

inference that the City Water Department representative's statement to Plaintiff represented the City's normal practice despite being in contravention to the dictates of the Code, the class of tenants of delinquent landlords are deprived of the ability to restore water services to their homes. The City has offered no rational basis for this treatment of this group. Accordingly, Defendants' motion to dismiss Plaintiff's as-applied equal protection claim is denied. The as-applied equal protection challenge based on the contention that the City denies restoration of water services even when a tenant agrees to pay the arrears and the restoration fee survives.

### b. Substantive Due Process

Plaintiff also brings a substantive due process challenge. "To prevail on [her] substantive due process claim, Plaintiff[] must establish a valid property interest in water service, . . . and must further establish that the City deprived [her] of that interest in an arbitrary and irrational manner." *Brown*, 878 F. Supp. 2d at 497 (citing *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 785 (2d Cir. 2007)("But having a cognizable property right is not enough. In order to prevail on their substantive due process claim, plaintiffs must also show that defendants infringed their property right in an arbitrary or irrational manner.")). "'[S]uch a claim is not established simply by proving that someone did not obtain what he or she is entitled to under state law.'" *Id.* (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 262–63 (2d Cir.1999)). "Instead, '[s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.'" *Id.* (quoting *Natale*, 170 F.3d at 263). Where, as here, a legislative policy is being

attacked, the standard is whether the policy is rationally related to a legitimate government purpose. *See Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003.)

### 1. Valid Property Interest

Constitutionally protected property rights are determined by reference to "an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  One independent source of Plaintiff's property interest in the receipt of water services is the Code's pronouncement that the Code's rules and regulations apply to "every person who shall be supplied, or whose property shall be supplied with water by the [City]." Code § 16-01.   Because the Code's water rules and regulations apply to all persons who are supplied with water, tenants like Plaintiff have a protected property interest in continued water service. *See Pilchen*, 728 F. Supp. 2d 198-99 (holding that a tenant had a protected property interest in water service based on a city ordinance which made it clear water service was for the benefit of all water users).

Plaintiff's protected property interest in water services is further demonstrated by the availability of a pre-termination hearing. *See* Code § 16-108(b)("Prior to the department of water shutting off the water to the property the department of water shall serve a written notice . . . said notice shall . . . (5) notify the owner and known occupants that they have the right to a hearing to contest the shutoff . . ."); *see also Memphis Light, Gas, & Water*, 436 U.S. at 11 (holding that local law remedies such as a pre-termination hearing evince the State's recognition of a protected property

interest); *Brown* 878 F. Supp. 2d 491 (holding that plaintiff tenant had shown a protected property interest where water service could not be simply terminated "at will" and was subject to certain enumerated conditions in the City Code including a pre-termination hearing.); *Davis v. Weir*, 328 F. Supp. 317, 321 (N.D. Ga. 1971)(holding that when a municipality undertakes to provide water to all applicants subject only to reasonable rules and regulations, the municipality has offered an "entitlement" the termination of which must be accompanied by procedural due process for the actual user). Thus, the Court turns to whether the City deprived Plaintiff of her protected property interest in water services in an arbitrary and irrational manner.

## 2. Outrageously Arbitrary Conduct

Applying a rational basis review, and for the reasons discussed above with regard to the equal protection claims, the Court finds that the Code, on its face, does not work an outrageously arbitrary result on tenants. There is a rational basis for the City to require current tenants, if they are not successful in a pre-termination hearing,[7] to satisfy property owners' water service debts and pay the restoration fee before services are recommenced. *See Brown*, 878 F. Supp. 2d at 498-99 ("At best, Plaintiffs demonstrate that they could have restored water service had they

---

[7]The fact that Plaintiff elected not to proceed with a pre-termination hearing raises a question whether she has standing to bring a facial substantive due process challenge based on the contention that the Code's provisions regarding water service termination and recommencement impose an outrageously arbitrary result on tenants. *See Prayze FM v. FCC*, 214 F.3d 245, 251 (2d Cir. 2000)("As a general rule, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy. This threshold requirement for standing may be excused only where a plaintiff makes a substantial showing that application for the benefit would have been futile.")(internal quotations and citations omitted). For purposes of this motion, however, the Court will presume that the City's policy is to deny recommencement of water services to tenants whether or not they attended and were unsuccessful in a pre–termination hearing.

been willing to pay their respective landlords' debts and that a more fair and reasonable practice would be to require Plaintiffs to pay only their proportionate share of the arrearages (with a right to recover from their landlords for their overpayment of rent) coupled with the right to establish water service in their own names going forward. This falls far short, however, of establishing that the City's practice of requiring repayment of arrearages incurred at a property before water service to that property is restored is an 'irrational' or 'arbitrary' method of collecting payment for water services which 'constitute[s] a gross abuse of governmental authority.'")(quoting *Natale*, 170 F.3d at 263)).  Thus, Defendants' motion on this ground is granted, and Plaintiff's facial substantive due process claim is dismissed.

However, assuming that the Code is applied, as Plaintiff alleges, in a way that prohibits the recommencement of water service even when a tenant agrees to pay the property owner's water bill and the recommencement of service fee, such conduct is not rationally related to a legitimate government purpose.  Therefore, Plaintiff plausibly presents an outrageously arbitrary scenario.  Accordingly, Defendants' motion directed to Plaintiff's as-applied substantive due process challenge is denied, and this claim survives.

## V.     CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss [dkt. # 10] is GRANTED in part and DENIED in part.  The motion is denied as to Plaintiff's as-applied equal protection claim based on the contention that the City denies restoration of water services even when a tenant agrees to pay the arrears and the

restoration fee, and as to Plaintiff's as-applied substantive due process claim. The motion is granted in all other respects.

Because this decision dismisses many of the claims upon which Plaintiff's Fed. R. Civ. P. 23 class certification motion [dkt. # 6] is based, that motion is DENIED with leave to renew.

**IT IS SO ORDERED.**

Dated: September 8, 2016

Thomas J. McAvoy
Senior, U.S. District Judge